UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MONA LEDET ET AL.                                CIVIL ACTION


VERSUS                                           NO. 25-793


BP PRODUCTS NORTH                                SECTION: "J"(5)
AMERICA, INC. ET AL.

### ORDER AND REASONS

Before the Court are a *Motion to Remand* **(Rec. Doc. 15)** filed by Plaintiffs
Mona Ledet, Angel Ledet, and Carl Ledet, Jr., and an opposition thereto (Rec. Doc.
20) filed by Defendants Chevron U.S.A. Inc. and Marathon Oil Company. Having
considered the motion and legal memoranda, the record, and the applicable law, the
Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

This litigation returns to federal court after this Court previously granted
remand. *Ledet et al. v. BP Products North America, Inc. et al.*, No. 24-2122 (E.D. La.
Oct. 24, 2024), ECF No. 37. The facts and procedural background, thus, are familiar.

The action arises from the death of Clay Ledet, Sr., who succumbed to lung
cancer in 2023 and who had been employed from 1994–2004 by the Hydril Company
in its Westwego, Louisiana pipe yard. Decedent's wife and two children filed a
wrongful death and survival action in state court against various out-of-state oil

companies,[1] an in-state non-profit lobbyist (the Delta Chapter of the American Petroleum Institute), and an in-state pipe cleaning contractor (OFS, Inc.), asserting Decedent's cancer to be caused by his exposure to naturally occurring radioactive material ("NORM") at the pipe yard. Specifically, Plaintiffs allege Defendant Oil Companies sent their used pipe to the Hydril Yard to be cleaned of NORM-contaminated scaling. (Rec. Doc. 2-1 at 6 ¶ 21). From Plaintiffs' retelling, Defendant Oil Companies retained control over the shipping, storage, handling, and cleaning of their pipes, *id.* at 23 ¶¶ 157–60, but the pipes were cleaned by third-party contractors such as OFS, *id.* at 7 ¶ 26. This cleaning process, in turn, exposed Decedent to "dangerous levels of radiation" through ground contact and dust inhalation. *Id.* at 6–7 ¶¶ 25, 31. Plaintiffs further allege the Delta Chapter of the American Petroleum Institute helped develop testing protocol "with the intent that it would fail to detect the overwhelming majority of NORM contamination that was present on used oil field pipe." *Id.* at 14 ¶ 87 (emphasis omitted). Against Defendant Oil Companies and OFS, Plaintiffs assert strict liability for "a permanent, inherent and hazardous defect in said used oilfield pipe." *Id.* at 22 ¶ 154. Plaintiffs seek punitive damages under Louisiana Civil Code Article 2315.3 (effective from September 1, 1984 to April 16, 1996) from Defendant Oil Companies and compensatory damages from all Defendants.

Despite a lack of party diversity, Chevron previously removed the litigation

---

[1] Named Defendants are BP Products North America, Inc.; Chevron U.S.A. Inc.; ConocoPhillips Company; Exxon Mobil Corporation; ExxonMobil Oil Corporation; Marathon Oil Company; OXY USA Inc.; Shell USA, Inc.; Shell Offshore Inc.; and SWEPI LP (collectively, "Defendant Oil Companies").

under the theory that Delta and OFS were improperly joined. This Court agreed as to Delta. *Ledet et al. v. BP Products North America, Inc. et al.*, No. 24-2122 (E.D. La. Oct. 24, 2024), ECF No. 37 at 5–6. The informational and networking organization set no enforceable industry policy and, thus, Plaintiffs presented no claim for possible recovery from Delta, leading the Court to disregard its citizenship for diversity purposes.

The joinder of OFS, however, was found proper. Through the attached affidavit of OFS President Douglas LaNasa, Jr., Chevron insisted OFS performed no oilfield pipe cleaning during the time of Decedent's employment. The assertions were rebutted by statements from former OFS and Hydril employees, creating a factual dispute. Resolving the issue, the Court first rejected Chevron's request for tailored discovery based on Plaintiffs' affidavits and additional defense documents submitted, refusing to pretry the case at the remand stage. This Court then remanded the case, concluding that Chevron had failed to carry its improper joinder burden.

Again relying on an affidavit from Douglas LaNasa, Jr., Chevron and Marathon ("Removing Defendants") removed this action a second time. And again, the defense theory is the improper joinder of OFS. Recognizing that "the case was (evidently) not initially removable[,]" Removing Defendants now aver that LaNasa's second affidavit constitutes an "other paper," newly alerting them that OFS is "a dying entity with no assets[] and its articles of incorporation have been terminated by the Louisiana Secretary of State[.]" (Rec. Doc. 2 at 3, 4 (discussing 28 U.S.C. § 1446(b)(3)).

Plaintiffs now move for remand, contending OFS is properly joined. Removing Defendants oppose.

## LEGAL STANDARD

A defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The district courts have original jurisdiction over cases involving citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest or costs. 28 U.S.C. § 1332(a)(1). The removing party bears the burden of proving by a preponderance of the evidence that federal jurisdiction exists at the time of removal. *DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Ambiguities are construed against removal and in favor of remand because removal statutes are to be strictly construed. *Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002).

Only the citizenship of real parties in interest is relevant for diversity jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). As such, the joinder of nondiverse formal, nominal, or unnecessary parties cannot prevent removal to federal court. *Nunn v. Feltinton*, 294 F.2d 450, 453 (5th Cir. 1961). The party seeking removal bears a heavy burden of proving improper joinder. *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 574 (5th Cir. 2004) (en banc). In determining the validity of an allegation of improper joinder, the district court must construe factual allegations, resolve contested factual issues, and resolve ambiguities in the controlling state law in the plaintiff's favor. *Burden v. Gen. Dynamics Corp.,* 60 F.3d

4

213, 216 (5th Cir. 1995).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood*, 385 F.3d at 573. To establish the latter, the removing party must show there is no possibility or reasonable basis of recovery by the plaintiff against an in-state defendant. *Id.* As such, a mere theoretical possibility of recovery is not sufficient to preclude a finding of improper joinder. *Id.* Thus, as the Fifth Circuit has voiced it, the threshold question becomes: "Is there a reasonably good chance that [the state] will hold the [nondiverse defendant] to some liability?" *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016) (quoting *Bobby Jones Garden Apartments, Inc.*, 391 F.2d at 177).

Ordinarily, a court should resolve the issue by conducting a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573. As a general rule, there is no improper joinder if a plaintiff is able to survive a 12(b)(6) challenge. *Id.*

However, a court may pierce the pleadings and conduct a summary inquiry of the evidence, but "only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* As the Fifth Circuit in *Smallwood* explained, such summary inquiry should seek answers to

narrow, material questions:

> For example, the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true.

*Id.* at 574 n.12. The narrow inquiry has led district courts within this circuit to conclude that the naming of a long-defunct corporation as a defendant could only yield a theoretical possibility of recovery from it and, therefore, its presence would not defeat diversity. *See Morgan Plantation, Inc. v. Tenn. Gas Pipeline Co.*, No. 16-1620, 2017 WL 1180995 (W.D. La. Feb. 8, 2017), *report and recommendation adopted*, 2017 WL 1181512 (W.D. La. Mar. 28, 2017) (last corporate filing twenty-five years before suit); *Weinstein v. Conoco Phillips*, No. 13-919, 2014 WL 868918 (W.D. La. Mar. 5, 2014) (revocation of charter sixteen years before suit); *Ashley v. Devon Energy Corp.*, No. 14-512, 2015 WL 803136 (M.D. La. Feb. 25, 2015) (last corporate filing thirty years before suit). Even with long periods of corporate inactivity, however, courts have remanded cases where facts were not uncontroverted, where there were indications that the business may have been sold or merged, and where there was no evidence that business did not have insurance coverage. *Gibson v. BP Am. Prod. Co.*, No. 17-1439, 2018 WL 914054, at *3–4 (W.D. La. Jan. 30, 2018), *report and recommendation adopted*, No. 17-1439, 2018 WL 912277 (W.D. La. Feb. 15, 2018); *see also see Beall v. Conoco Phillips Co.*, No. 08-289, 2008 WL 2433579, at *3 (M.D. La. June 16, 2008) ("Defendant . . . confuses the concept of 'recovery' with the concept of 'valid claim.'").

## **DISCUSSION**

The matter before the Court is straightforward: *Does nondiverse OFS strip federal jurisdiction from this action?* In the previous remand, this Court determined Plaintiffs had pleaded a cause of action against OFS. *Ledet et al. v. BP Products North America, Inc. et al.*, No. 24-2122 (E.D. La. Oct. 24, 2024), ECF No. 37 at 6–7. On 12(b)(6)-type evidence, therefore, Removing Defendants' improper joinder theory fails.

The inquiry does not end there, however, as Removing Defendants substantially base their current jurisdictional argument on the affidavit of OFS President Douglas LaNasa, Jr. Plaintiffs counter with documentation from Louisiana and Texas secretaries of state, a 2025 Parcel Listing from Plaquemines Parish, Louisiana, and correspondence with OFS's registered agent and attorney. These pertinent documents necessitate a narrow piercing of the pleadings for a summary inquiry, in search of "the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573.

Attached to the Notice of Removal, LaNasa's affidavit of March 24, 2025 states OFS has not engaged in business activity for three years, has no assets, and would have its charter terminated on April 9, 2025. Removing Defendants include notice from the Louisiana secretary of state to show OFS was, in fact, administratively terminated on April 10, 2025. (Rec. Doc. 2-3). Also analyzing the affidavit, Plaintiffs emphasize different aspects of LaNasa's statements. Although he claims business operations to have ceased three years ago, LaNasa also indicates OFS had an

employee beyond that time, who was tasked with "winding down" the company. To Plaintiffs, the action of "winding down" itself is evidence that OFS was not dissolved at the time. Reciting Louisiana corporation statutes, Plaintiffs bolster their not-defunct argument by noting the numerous dissolution steps OFS failed to take.

Unquestionably, OFS was not formally dissolved when this action was filed. LaNasa, who describes himself as OFS's sole corporate officer, did not move through the formalities of voluntary dissolution. *See* La. Stat. Ann. § 12:1-1402(B). LaNasa did not submit articles of dissolution to the Louisiana secretary of state. *See* La. Stat. Ann. § 12:1-1403. LaNasa provided no notice of dissolution to known or possible claimants. *See* La. Stat. Ann. § 12:1-1406–07. OFS was administratively terminated on April 10, 2025; however, this action was filed in state court nearly nine months earlier, on July 12, 2024. Administrative termination, moreover, does not extinguish any claim against OFS. *See* La. Stat. Ann. § 12:1-1443.

Removing Defendants downplay corporation law formalities, favoring a broader assessment of whether OFS is defunct. Pulling from *Weinstein v. Conoco Phillips* out of the Western District of Louisiana, Removing Defendants present factors for consideration, including: "(i) lack of operations, office space, web presence, employees, property, bank accounts, or other assets; (ii) revocation of the company's charter due to inactivity; and (iii) the existence of deceased principals, officers, or agents." (Rec. Doc. 20 at 8–9 (citing *Weinstein*, 2014 WL 868918, at *1)). This circumstantial assessment may be proper where the nondiverse corporate defendant had long periods of inactivity. More to the point, the narrow inquiry in such a case

presumably would "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573. However, such is not the case here. OFS's debated corporate status is measured in months, not decades.

Further, even if OFS's inactive status were closer to that in the persuasive authorities cited by Removing Defendants, a circumstantial inquiry would not provide undisputed facts to prove improper joinder. In his affidavit, LaNasa names himself as the OFS president, using the present tense in the March 2025 statement: "I am the President and sole officer of OFS, Inc." (Rec. Doc. 2-2 at 1 ¶ 2). LaNasa asserts that OFS has no assets, but Plaintiffs supply records from March 2025 that list moveable property in OFS's name. LaNasa insists OFS has no employees, but its registered agent accepted service of the suit at the corporation's listed address on August 5, 2024. (Rec. Doc. 2-1 at 41). In an email on May 7, 2025, that same agent stated to Plaintiffs' counsel that he was OFS's counsel and would be enrolling in pending NORM-related cases. (Rec. Doc. 15-11). Finally, LaNasa's affidavit is silent on insurance policies or other possible means of recovery for the pertinent time period. Based on these disputed facts alone, OFS cannot be considered a defunct corporation and mere nominal defendant.

Although Removing Defendants make use of decisions from district courts of this circuit for their factor-based argument, they insist this case is "controlled by *Kling Realty Co.* [*v. Chevron USA, Inc.*, 575 F.3d 510, 516 (5th Cir. 2009)] where the Fifth Circuit affirmed the finding of improper joinder based on an absence of any

evidence establishing a reasonable possibility of recovery against nondiverse, inactive defendants." (Rec. Doc. 20 at 8). *Kling Realty*, however, is inapposite here. As Removing Defendants correctly capture, the Fifth Circuit in *King Realty* found improper joinder and refused remand due to "no reasonable possibility of recovery" against the nondiverse defendant. *Kling Realty Co.*, 575 F.3d at 516. But that determination was based on the nature of the claim, namely, that a supervisor (the nondiverse defendant) could not be held liable for purely economic and emotional injuries done to third parties. *Id.* Lifted from its context, the use of "recovery"—rather than "a valid claim"—does not illuminate the issue before this Court.

Simply, Removing Defendants fail in their heavy burden of establishing improper joinder. The facts are not undisputed that Plaintiffs would be precluded from recovery from OFS. As such, remand is necessary.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' *Motion to Remand* **(Rec. Doc. 15)** is **GRANTED**. This case is **REMANDED** to the 24th Judicial District Court for the Parish of Jefferson.

New Orleans, Louisiana, this 13th day of June, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE